UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| JIM C. PITTMAN, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | 3:08-cv-00342-RLM-CAN |
| THE HOUSING AUTHORITY OF THE ) | |
| CITY OF SOUTH BEND, INDIANA, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO STRIKE**

Plaintiff, Jim C. Pittman, Jr., filed Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment ("Opposition") and supporting Affidavits from Plaintiff and Mike Bovo as well as an unsworn statement by Troy Boone. [Docket Nos. 19, 20, 21, 22 and 23.] Many of the allegations in Plaintiff's Opposition, Affidavits and the unsworn statement are inadmissible and, therefore, should be stricken.

**I.    PLAINTIFF'S OPPOSITION IGNORES LOCAL RULES**

Plaintiff's Opposition exceeds the twenty-five (25) page limit imposed by Northern District Local Rule 7.1. Plaintiff did not file a motion asking permission to exceed the page limit, and therefore the Opposition should be stricken. "When a party ignores the page limits established by the local rules or by the orders of the court, the court typically strikes the party's brief or simply strikes the excess pages." *In re Ready-Mixed Concrete Antitrust Litigation*, 2009 WL 2913922 (S.D. Ind. 2009) (*citing Aspera v. Copperweld Corp.*, 2006 WL 488686 at *2 (N.D. Ill. Feb. 24, 2006)); *see also Range v. Brubaker*, 2009 WL 161699 (N.D. Ind. Jan. 21, 2009) (granting motion to strike briefs filed in excess of court's order). Plaintiff willfully ignored the

Local Rules and therefore his entire Opposition should be stricken, or in the alternative, the last five (5) pages should be stricken.

## II.    TROY BOONE'S UNSWORN STATEMENT IS INADMISSIBLE

Troy Boone's signed statement is inadmissible because it unsworn and therefore does not comply with Federal Rule of Civil Procedure 56(e).  Fed. R. Civ. Proc. 56(e); *See Pfeil v. Rogers*, 757 F.2d 850, 859 (7th Cir. 1985) (stating that unsworn statements do not meet the requirements of Rule 56(e)).  Troy Boone's unsworn statement should be stricken in its entirety.

## III.   FLECKNER'S AND SMITH'S ALLEGED WARNINGS ARE IRRELEVANT

Plaintiff argues that Fleckner's and Smith's alleged warnings to Plaintiff that he would be terminated or suffer negative employment consequences if he continued interacting with Colbert amount to evidence of retaliation.  (Pl's Opposition, pp. 19, 21.)  But, "[s]tatements by subordinates normally are not probative of an intent to retaliate by the decisionmaker." *Id.* (*quoting Willis v. Marion County Auditor's Office*, 118 F.3d 542, 546 (7th Cir. 1997).  Under the so-called "cat's paw" theory, retaliatory animus of a nondecisionmaker can be imputed to the decisionmaker where the subordinate has "singular influence" over the employment decision. *Id.* (*quoting Staub v. Proctor Hosp.*, 560 F.3d 647, 659 (7th Cir. 2009).[1]  Plaintiff bears the burden of proof to establish the cat's paw theory.  *Metzger v. Illinois State Police*, 519 F.3d 677 (7th Cir. 2008).

Fleckner's and Smith's alleged statements are not relevant because they were not made by Marva Leonard-Dent, who made the promotional decision at issue in this case.  Neither Fleckner nor Smith had authority to make the promotional decision; only Leonard-Dent did.

---

[1] Some Seventh Circuit cases do not draw such a bright line and require "singular influence," and have used the cat's paw theory where the court found "taint" and "influence" by a nondecisionmaker made the decisionmaker a "conduit" for the nondecisionmaker's prejudice.  *Long*, 2009 WL 3400955 at *9 (noting the conflict in Seventh Circuit cases on this issue).

(Leonard-Dent Aff. ¶8.)  And, Plaintiff has failed to present any evidence that Leonard-Dent had any knowledge of Plaintiff's alleged protected activities (let alone that she was motivated by those alleged protected activities).  If Leonard-Dent did not know about Plaintiff's protected activities, she could not have been motivated by those alleged protected activities when she decided to promote Boone.  *See Luckie v. Ameritech Corp.*, 389 F.3d 708 (7th Cir. 2004).

Moreover, Plaintiff presents no evidence to argue that the cat's paw theory applies here.  Plaintiff presents no evidence that Fleckner or Smith had any influence in the promotional decision.  To the contrary, the evidence demonstrates that Leonard-Dent conducted her own independent analysis of Boone as a candidate.  Indeed, she based her decision on her knowledge of Boone's experience as the head of maintenance at a property management company; his excellent work after being hired by the Housing Authority; the thousands of dollars he saved the Housing Authority fixing plumbing bursts; and his initiative by enrolling in plumbing classes.  Moreover, Plaintiff presents no evidence that Leonard-Dent even knew about Fleckner's or Smith's alleged retaliatory statements (let alone that she considered those alleged statements when making her decision).

## IV.     PLAINTIFF'S AFTER-ACQUIRED EVIDENCE IS NOT ADMISSIBLE

Plaintiff attempts to challenge Boone's qualifications for the Technician III position by arguing that he has since been terminated from his position with the Housing Authority.  This evidence is not relevant and is inadmissible.  *See Richter v. Hook-Superx, Inc.*, 142 F.3d 1024, 1030 (7th Cir. 1998) (after-acquired evidence is irrelevant); *Atanus v. Perry*, 520 F.3d 662, 674 (7th Cir. 2008) (holding that plaintiffs must demonstrate that the employer's proffered reason for the layoff had "no [ ] basis in fact", not that the decision was a bad one) (citation omitted).  Specifically, the following after-acquired evidence should be stricken:

- "In contract, Boone did not perform his assigned Maintenance Technician III job duties to a level comparable to the level of SBHA expectations, as manifested by Boone's interim termination during the past year." (Pl's Aff. ¶ 14.)

- "Despite my said satisfactory work performance and despite Boone's evidently unsatisfactory work performance, Boone received more favorable treatment from the SBHA immediately following the October 26, 2006 rejection of my application for the Maintenance Technician III position, and given the higher pay rate paid by the SBHA to Boone (in contrast to my Maintenance Technician II wages), Boone was economically more favored than me, by the SBHA, all with respect to his appointment to the Maintenance Technician III position." (Pl's Aff. ¶ 15.)

What matters is whether the Housing Authority believed Boone was the most qualified candidate at the time of its decision. Boone's performance after the promotion decision was made is irrelevant and inadmissible. *See Atanus*, 520 F.3d at 674.

V.   **PLAINTIFF'S OPPOSITION RESTATES HIS COMPLAINT**

Plaintiff's Opposition relies significantly on his Complaint. In fact, the first three and a half pages of Plaintiff's Opposition are almost entirely comprised of allegations cut and pasted from his Complaint. Federal Rule of Civil Procedure 56(e) clearly prohibits reliance "merely on allegations or denials in its own pleading" and provides that failure to "set out facts showing a genuine issue for trial" via affidavits or other evidence will result in summary judgment being granted against the party opposing the motion. *See also McDonald v. Lattire*, 844 N.E.2d 206, 211 (Ind. App. 2006) (holding in part that the plaintiff's response to the defendant's motion for summary judgment "was a late-filed rehash of her complaint with no opposing 'evidence' designated.") Thus, to avoid summary judgment, Plaintiff is relying on only a few factual contentions that have support from sources outside his Complaint. Plaintiff's heavy reliance on the allegations in his Complaint is insufficient to create an issue of fact for the jury and therefore Defendant requests that all allegations citing to Plaintiff's Complaint be stricken as violating Federal Rule of Civil Procedure 56(e).

## VI. MANY OF PLAINTIFF'S CONTENTIONS LACK FOUNDATION

In addition, several of Plaintiff's factual contentions are inadmissible because they are made without personal knowledge, and instead reflect Plaintiff's personal opinion. Under Rule 56(e) of the Federal Rules of Civil Procedure, an affidavit submitted in opposition to a summary judgment motion must "be made on personal knowledge" and "set forth such facts as would be admissible in evidence." FED. R. CIV. P. 56(e); *see Toro Co. v. Krouse, Kern & Co., Inc.*, 827 F.2d 155, 163 (7th Cir. 1987) ("statements based merely on information and belief do not satisfy the standards of Rule 56(e).")

Plaintiff does not comply with this requirement. Indeed, Plaintiff's Opposition and supporting documents are full of contentions without personal knowledge and reflects Plaintiff's or others' personal opinions. Specifically, Plaintiff makes contentions regarding his and others' qualifications for the Technician III position based on personal opinion or without personal knowledge:

- "Pittman Affidavit, paragraph 13 [e]stablishes that Pittman performed his job duties to the level of the legitimate expectations of his employer." (Pl's Opposition, p. 13, ¶ B.) Plaintiff provides no basis for his opinion that he was meeting the Housing Authority's expectations.

- "In the Fall of 2006, I applied for a position of Maintenance Technician III, and I anticipated I would receive that position, particularly since I had more work experience than some of the applicants, and because I had certifications not possessed by some of those applicants for that Maintenance Technician III position. More precisely, I became aware that a co-worker with less experience and less certification– namely, Troy Boone (hereinafter referred to as "Boone") – had also applied for the Maintenance Technician III position." (Pl's Aff. ¶ 5.)

- "In contrast, Boone did not perform his assigned Maintenance Technician III job duties to a level comparable to the level of SBHA expectations, as manifested by Boone's interim termination during the past year." (Pl's Aff. ¶ 14.)

- "Despite my said satisfactory work performance and despite Boone's evidently unsatisfactory work performance, Boone received more

>   favorable treatment from the SBHA immediately following the October 26, 2006 rejection of my application for the Maintenance Technician III position, and given the higher pay rate paid by the SBHA to Boone (in contrast to my Maintenance Technician II wages), Boone was economically more favored than me, by the SBHA, all with respect to his appointment to the Maintenance Technician III position." (Pl's Aff. ¶ 15.)

- "While being employed three employees not including myself applied for the open tech-3 position. I was the only tech called for an interview for the position and I was granted the tech-3 position." (Boone Unsworn Statement.)

These contentions lack foundation because Plaintiff provides no basis—other than speculation—to support his claim that he was more qualified for the Technician III position than some of the applicants. Plaintiff has no means of knowing the identity of all of the applicants for the Technician III position, let alone the applicants' qualifications. Plaintiff applied for the position. He was not a member of management involved in the hiring process nor was he otherwise privy to the application materials or personnel information such as evaluations or other performance indicators. Similarly, Boone did not have access to this information (or interview information) as an applicant for the position. Further, Plaintiff admitted in his deposition that he no knowledge of Boone's qualifications other than Boone previously working for a housing company and a car company and the fact that Boone did not have a certificate that Plaintiff did. (Pl's Dep. 299-301.) Aside from this cursory information, Plaintiff can make no comparison between himself and Boone. (Pl's Dep. 301.) He further cannot speculate as to another employee's performance. Thus, Plaintiff's testimony regarding his qualifications relative to qualifications of other applicants lacks foundation.

Plaintiff also makes contentions regarding who was "threatened" by David Fleckner and Albert Smith, and who was not. These statements are based on personal opinion or without personal knowledge:

- "Therefore Boone – who was not threatened by Fleckner and by Albert Smith concerning their interactions with Colbert – did not receive any economic retaliation and, in fact, received economic rewards from the SBHA. On the other hand, I – who was the recipient of the retaliatory threats from Fleckner and from Albert Smith – did receive economic retaliation from the SBHA, in the form of the unfair processing of my application for the Maintenance Technician III position, leaving me to only receive the pay which is afforded to Maintenance Technician II employees of the SBHA." (Pl's Aff. 15.)

- "Pittman Affidavit, paragraph 15 and paragraph 16 [e]stablishes that another SBHA co-worker received more favorable SBHA treatment (i.e., Troy Boone was not threatened for interacting with Colbert, and in fact, was rewarded for such non-interactions by appointment to the Maintenance Technician III position.)" (Pl's Opposition, p. 13, ¶ D.)

These contentions lack foundation because Plaintiff has no basis for knowing what Fleckner and/or Smith said to Boone. Plaintiff cannot be aware of all their conversation and further cannot establish personal knowledge that a specific conversation did or did not occur.

Moreover, Plaintiff contends that others were treated more favorably than he without explaining how they were treated better or what personal knowledge he has to make those statements:

- "In the interim three (3) years since I was threatened by Fleckner and by Albert Smith, they have treated me worse than they have treated other of my co-workers who did not assist or agree with Colbert. Examples of those other co-workers who were treated more favorably than me include James McGinnis, Lawrence Beane, Larry Anderson, and Tyrone Zelasko, and to the best of my present knowledge, none of those four (4) co-workers ever assisted Colbert in the pursuit of his employment discrimination charges against the SBHA." (Pittman's Aff. ¶ 16; Bovo Aff. ¶ 5.)

Additional unfounded statements pertaining to the "fairness" of the Technician III hiring process were made without personal knowledge:

- "Thus, this **KEY FACT ISSUE #4** presents a further…." Boone's statement notes that Boone "believe[d]" the process was handled wrong. Plaintiff's statement in the Opposition that the award of the post to Boone was **"handled wrong"** is without support, as Plaintiff has no basis to support this statement.

- 7 -

Because these statements are either based on personal opinion or because Plaintiff lacks personal knowledge to support these statements, they are inadmissible and should be stricken. *See Toro Co. v. Krouse, Kern & Co., Inc.*, 827 F.2d 155, 163 (7th Cir. 1987) ("statements based merely on information and belief do not satisfy the standards of Rule 56(e)"); *Watt v. State Farm Mutual Automobile Ins. Co.*, 2006 WL 2798103 at * 7 (N.D. Ind. 2006) (striking affidavit where affiant lacked personal knowledge to assert many of the facts in his affidavit and failed to set forth specific facts to justify the opinions expressed in his affidavit); Rule 56(e) (requiring personal knowledge); Fed. R. Evid. 602 (same).

## VII.   MANY OF PLAINTIFF'S STATEMENTS ARE LEGAL CONCLUSIONS

Federal Rule of Civil Procedure 56(e) specifies that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  "Because legal argumentation is an expression of legal opinion and is not a recitation of a 'fact' to which an affiant is competent to testify, legal argument in an affidavit may be disregarded."  *Pfeil v. Rogers*, 757 F.2d 850, 862 (7th Cir. 1985).  Plaintiff's Opposition is replete with legal conclusions (see list below), all of which should be disregarded.

- Pittman Affidavit, paragraph 10 [e]stablishes Pittman was a member of a protected class (i.e., he was a co-worker of Colbert, who had filed an EEOC charge of discrimination, and thus protected from retaliation)." (Pl's Opposition, p. 13, ¶ A.)  That "Pittman was a member of a protected class" is a legal conclusion.

- Pittman Affidavit, paragraph 15 Complaint, page 6, paragraph 7, page 7, paragraph 8 [e]stablishes that SBHA treatment of Pittman subjected him to an adverse employment action (i.e., the wrongful handling of his application for the Maintenance Technician III position)."  (Pl's Opposition, p. 13, ¶ C.)  That the "wrongful handling of his application" was an adverse action is a legal conclusion.

- "In essence, Colbert – **from and after August 15, 2006** – was entitled to certain *unfettered* due process rights to allow an EEOC investigation of

- 8 -

the charge he had filed on that date, with the adjective "*unfettered*" including the protected right to have all of his co-worker potential witnesses insulated from SBHA retaliatory pressure. The immediate protected party, *i.e.*, Colbert, was thus just one of a group of protected parties, with the remainder of those protected parties consisting of co-workers such as Pittman and Mike Bovo." (Pl's Opposition, p.16.) That Colbert's "co-worker potential witnesses" are protected parties under Title VII is a legal conclusion.

- "Notwithstanding those stated retaliation warnings from Fleckner and Albert Smith, I continued my normal course of inter-actions with Colbert during the Fall of 2006." (Pl's Aff. ¶ 5.) "[R]etaliation warnings" is a legal conclusion.

- "With further respect to the aforementioned retaliatory warnings made by my SBHA supervisors, on November 17, 2006, I met with the representatives of the South Bend Human Rights Commission, and with the assistance of Maria Diana Moya, I completed and signed my own "Charge of Discrimination" against the SBHA." (Pl's Aff. ¶ 8.) "[R]etaliatory warnings" is a legal conclusion.

- "I state that I was entitled to be protected from such retaliation, inasmuch as I was a co-worker of an SBHA employee who had filed a charge of discrimination (namely, Colbert) and, during the period of the investigation of Colbert's said charge against the SBHA, that same employer should not have retaliated against me, and should not have discriminated against me in terms of denying me even an interview, all with respect to my application for the Maintenance Technician III position." (Pl's Aff. ¶ 10.) That Plaintiff is entitled to protection as a co-worker for Colbert is a legal conclusion, as is Plaintiff's statement that his employer should "not have retaliated against [him], and should not have discriminated against [him]…."

- "Therefore, Boone – who was not threatened by Fleckner and by Albert Smith concerning their interactions with Colbert – did not receive any economic retaliation and, in fact, received economic rewards from the SBHA. On the other hand, I – who was the recipient of the retaliatory threats from Fleckner and from Albert Smith – did receive economic retaliation from the SBHA, in the form of the unfair processing of my application for the Maintenance Technician III position, leaving me to only receive the pay which is afforded to Maintenance Technician II employees of the SBHA." (Pl's Aff. ¶ 15.) "Economic retaliation" is a legal conclusion, as are Plaintiff's statements that he received "retaliatory threats" and "economic retaliation".

- 9 -

## VIII. MANY OF PLAINTIFF'S AVERMENTS ARE SELF-SERVING, UNSUPPORTED OR CONTRADICTED

Plaintiff cannot create a genuine issue of fact if he only offers self-serving, incorrect, and unsupported evidence. *Unterreiner v. Volkswagen of Am., Inc.*, 8 F.3d 1206, 1210 (7th Cir. 1993) (finding the Plaintiff's inconsistent statements regarding whether his employer posted the required ADEA notice were so unreliable that they could not create a genuine issue of material fact); *Albiero v. City of Kankakee*, 246 F.3d 927 (7th Cir. 2001) (holding self-serving statements contained in an affidavit will not defeat a motion for summary judgment when these statements are "without factual support in the record"). Moreover, as a general rule, the law of the Seventh Circuit does not permit a party to create an issue of fact by submitting an affidavit whose conclusions contradict prior deposition or other sworn testimony. *Buckner v. Sam's Club, Inc.*, 75 F.3d 290 (7th Cir. 1996). Plaintiff relies on many self-serving, unsupported and contradicted statements in his Opposition. The following statements fall under this category and, therefore, should be stricken.

- "During my said employment, I have received periodic pay increases, based upon my satisfactory performance of my assigned duties." (Pl's Aff. ¶ 2.)

- "More precisely, I became aware that a co-worker with less experience and less certification– namely, Troy Boone (hereinafter referred to as "Boone") – had also applied for the Maintenance Technician III position." (Pl's Aff. ¶ 5.) This statement contradicts Plaintiff's deposition testimony wherein he acknowledges that he has only limited information (some prior employer information and lack of one certification) with which to compare his qualifications for the job with Boone's. (Pl's Dep. 299-301.)

- "Throughout my SBHA employment, I have performed my assigned Maintenance Technician II job duties to the level of expectations, and have continued to receive periodic pay raises in conjunction with that performance." (Pl's Aff. ¶ 13.)

- "In contrast, Boone did not perform his assigned Maintenance Technician III job duties to a level comparable to the level of SBHA expectations, as

- manifested by Boone's interim termination during the past year." (Pl's Aff. ¶ 14.)

- "Despite my said satisfactory work performance and despite Boone's evidently unsatisfactory work performance, Boone received more favorable treatment from the SBHA immediately following the October 26, 2006 rejection of my application for the Maintenance Technician III position, and given the higher pay rate paid by the SBHA to Boone (in contrast to my Maintenance Technician II wages), Boone was economically more favored than me, by the SBHA, all with respect to his appointment to the Maintenance Technician III position.." (Pl's Aff. ¶ 15.)

- "Those threats, as particularly noted in the preceding paragraph 2 of this Affidavit, remain in effect, to the best of my understanding, and I am making this sworn statement under the probability that Fleckner and Albert Smith may cause me to lose my SBHA employment." (Plaintiff's Aff. ¶ 16; Bovo Aff. ¶ 5.)

## IX.   CONCLUSION

The vast majority of allegations in Plaintiff's Opposition and supporting documents are inadmissible because they are unsworn, improperly rely on allegations in the Complaint, contain statements based on personal opinion, not personal knowledge, state legal conclusions, are self-serving and/or contradict prior sworn testimony. Because the above noted statements in the Opposition and Affidavits are inadmissible, the Court should grant Defendant's Motion to Strike.

Respectfully submitted,

/s/ Michael P. Palmer
Michael P. Palmer (25199-71)
BARNES & THORNBURG LLP
600 1st Source Bank Center
100 N. Michigan Street
South Bend, Indiana 46601
Telephone:  (574) 233-1171

- 12 -

## CERTIFICATE OF SERVICE

I hereby certify that on November 16, 2009, I electronically filed the foregoing *Memorandum of Law in Support of Defendant's Motion to Strike* with the Clerk of the Court using CM/ECF system, which sent notification of such filing to the following counsel of record for Plaintiff:

>Roy D. Burbrink
>BURBRINK & CLEMONS, P.C.
>310 North Michigan Street, Suites 205-207
>Post Office Box 671
>Plymouth, Indiana 46563

/s/ Michael P. Palmer