UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JIM C. PITTMAN, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No: 3:08 CV 342 JTM |
| | ) |
| HOUSING AUTHORITY OF | ) |
| THE CITY OF SOUTH BEND, IND., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION and ORDER

Before the court for resolution is the motion for summary judgment (docket # 16) filed by defendant Housing Authority of the City of South Bend ("SBHA") on plaintiff Jim Pittman's complaint alleging racial discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. The SBHA also moved to strike portions of Pittman's brief in opposition and supporting exhibits (docket # 19-23). Because assuming the truth of Pittman's factual allegations at this time does not affect the court's summary judgment ruling, the court **DENIES** the SBHA's motion to strike (docket # 24). For the reasons explained below, the court **GRANTS** summary judgment in favor of the SBHA on Pittman's claims.

## I. BACKGROUND[1]

In September 2005, Pittman (African American) applied for a temporary Maintenance Technician II ("Tech II") position with the SBHA. (Leonard-Dent Aff. ¶ 8, App. to Br. in Supp. of Def.'s Mot. for Summ. J., DE # 18-1 [hereinafter "Leonard-Dent Aff."].) The SBHA's manager of human resources, Sharon McDonald (African

---

[1] The facts in this section are either undisputed or, when in dispute, resolved in favor of the plaintiff. *See Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999) (noting that during summary judgment the court construes all facts in the light most favorable to the nonmoving party).

American), and manager of the maintenance department, David Fleckner (Caucasian), interviewed Pittman and recommended him for hire. (Leonard-Dent Aff. ¶¶ 7, 8; McDonald Aff. ¶¶ 2, 7, 12, 13, App. to Br. in Supp. of Def.'s Mot. for Summ. J., DE # 18-3 [hereinafter "McDonald Aff."]; Fleckner Aff. ¶¶ 2, 4, 10, App. to Br. in Supp. of Def.'s Mot. for Summ. J., DE # 18-4 [hereinafter "Fleckner Aff."].) The SBHA's executive director, Marva Leonard-Dent (African American), is responsible for making all personnel decisions and approved Pittman's hire on October 4, 2005. (Leonard-Dent Aff. ¶¶ 2, 4, 8.) Almost five months later, again with Fleckner and McDonald's recommendation, Pittman applied to become a full-time Tech II. (Leonard-Dent Aff. ¶ 9; McDonald Aff. ¶ 14; Fleckner Aff. ¶ 11.) On or about March 29, 2006, Leonard-Dent approved the decision and placed Pittman on regular payroll as a Tech II under the supervision of Fleckner and his assistant manager Albert Smith (African American). (Leonard-Dent Aff. ¶¶ 7, 9; McDonald Aff. ¶ 14; Fleckner Aff. ¶¶ 7, 11; Smith Aff. ¶¶ 2-4, App. to Br. in Supp. of Def.'s Mot. for Summ. J., DE # 18-7 [hereinafter "Smith Aff."].) Pittman now earns approximately $15.08 an hour due to merit-based pay raises as a Tech II, but he filed this lawsuit because he would be making more money had he received the Maintenance Technician III ("Tech III") promotion that he applied for on October 9, 2006. (Pittman Aff. ¶¶ 1, 2, 13, 15, Exb. 8, App. to Plf.'s Opp., DE # 23 [hereinafter "Pittman Aff."].) Pittman claims that the SBHA's October 26 decision not to promote him was motived by racial discrimination and retaliation for engaging in protected activity (docket # 1).

Less than one month before the SBHA posted the Tech III vacancy, Pittman's first performance review took place on September 12, 2006, wherein Fleckner rated Pittman as having "met overall job performance" as a Tech II. (Fleckner Aff. ¶ 12; Pittman Dep. at 104, 116, 196, Exb. 13, App. to Br. in Supp. of Def.'s Mot. for Summ. J., DE # 18-5, 18-6 [hereinafter "Pittman Dep."].) Pittman expressed an interest in progressing to the Tech III position within the next two years, and Fleckner explained to Pittman that he was not ready to be a Tech III yet. (Fleckner Aff. ¶ 13; Pittman Dep. at 121-23.) Pittman

2

acknowledged that Tech III's are expected to have more advanced skill with regard to HVAC, carpentry, electrical, and plumbing work, agreed that he "wasn't ready for a Tech III right there," and recognized that he first needed to "gather and study all knowledge" required by the position. (Fleckner Aff. ¶ 13; Pittman Dep. at 91, 122-24, Exb. 13.) In light of Pittman's ambition to eventually become a Tech III, Fleckner developed a plan to assist Pittman with obtaining the qualifications and experience he needed to advance. *Id.*

When the Tech III position was internally posted in October 2006, Pittman told Fleckner he wanted to apply. (Leonard-Dent Aff. ¶ 10; Fleckner Aff. ¶ 14; Pittman Dep. at 55, 66-68, Exb. 7.) Fleckner reminded Pittman that he was not qualified to be a Tech III because Pittman did not have adequate time to acquire the necessary skills and education for the job. (Fleckner Aff. ¶¶ 9, 14; Pittman Dep. at 55, 123-24, 129-30, 196, Exb. 13.) Despite Fleckner's reminder, Pittman applied for the position along with three other SBHA employees, Johnny Jones (African American), Michael Brown (Caucasian), and Troy Boone (African American).[2] (Leonard-Dent Aff. ¶ 10; McDonald Aff. ¶ 15; Fleckner Aff. ¶ 15; Pittman Dep. at 73, Exb. 8.)

Pittman thought he was more qualified than the other candidates because he was certified in 2000 for "advanced manufacturing" in the recreational vehicle industry ("RV certification"). (Compl. at Exb. I; Pittman Aff. ¶ 7; Pittman Dep. at 190, 300-01.) However, during his deposition Pittman admitted that his RV certification had nothing to do with housing repair but dealt with RV industry standards (relevant to Pittman's previous work in the RV industry). (Compl. at Exb. I; Pittman Dep. at 190-91, 193.) As to the other applicants, Brown was possibly more qualified than Pittman because

---

[2] Even though James McGinnis, Lawrence Beane, Larry Anderson, and Tyrone Zelasko did not apply for the Tech III position and Pittman did not provide sufficient information to conduct a 'similarly-situated' employee analysis, Pittman claims that these SBHA employees were somehow treated more favorably than he was treated. (Pittman Aff. ¶ 16.)

3

Brown had more certifications and was employed longer with the SBHA. (Pittman Dep. at 212.) Candidate Boone appeared to be more qualified because he once had been the head of maintenance at a property management company where he received significant management and maintenance experience, and learned advanced construction and rehabilitation skills. (Leonard-Dent Aff. ¶ 11; Fleckner Aff. ¶ 16; Pittman Dep. at 82, 185, Exb. 9.) Boone also saved the SBHA thousands of dollars by independently repairing plumbing bursts which were previously hired out. *Id*.

On October 10, Fleckner noted on Pittman's application that "Mr. Pittman has not demonstrated through day to day performance or certifications that he can perform all phases of plumbing, construction, HVAC, [and] electrical since his hire." (Fleckner Aff. ¶¶ 14, 15; Pittman Dep. at Exb. 8.) Pittman conceded to having done nothing since his September evaluation, except work as a Tech II, to make himself a more qualified candidate for the Tech III position. (Fleckner Aff. ¶ 14; Pittman Dep. at 129-30, 196.) Of the four applicants for the Tech III position, Fleckner and McDonald recommended Boone for the job. (Leonard-Dent Aff. ¶ 11; Fleckner Aff. ¶¶ 15, 16.)

After reviewing the applications and recommendations, Leonard-Dent did not feel that Pittman, Jones, or Brown met the minimum qualifications for the Tech III position, so she sent them all rejection letters. (Leonard-Dent Aff. ¶ 10; McDonald Aff. ¶ 15; Fleckner Aff. ¶ 17.) Pittman's letter denying his application was dated October 26, 2006. (Compl. at Exb. H; Leonard-Dent Aff. ¶ 10; Pittman Aff. ¶ 7; Pittman Dep. at 219, Exb. 16.) Because Leonard-Dent believed that Boone was the most qualified candidate, she interviewed him[3] and ultimately offered him the Tech III position.[4] (Leonard-Dent

---

[3] In a letter dated October 21, 2009, Boone expressed his belief that it was unfair for Leonard-Dent to interview only him and not the other applicants. (Pittman Aff. ¶¶ 11, 12, Exb. 1.)

[4] When the promotional decision was made, the SBHA had 77 employees, of whom 56 were African American, and the SBHA's maintenance department alone consisted of 20 employees, of whom 15 were African American. (McDonald Aff. ¶ 11.)

4

Aff. ¶ 11; McDonald Aff. ¶ 16; Fleckner Aff. ¶¶ 8, 17.) Leonard-Dent confirmed that it was her decision to promote Boone based on his qualifications and experience, and that she did not confer with any member of the SBHA's Board of Commissioners because the Commissioners were not involved in the SBHA's daily personnel decisions. (Leonard-Dent Aff. ¶¶ 11, 13; McDonald Aff. ¶ 18.) Pittman agreed that Leonard-Dent was the "ultimate one" that made the promotional decision, but believed that she received assistance from McDonald, Fleckner, and Smith. (Pittman Dep. at 213.)

Despite Boone's relevant experience, Pittman claims that he was more qualified than Boone solely on account of his RV certification. (Pittman Aff. ¶¶ 5, 7; Pittman Dep. at 190, 193, 300-01.) Pittman alleges that the SBHA did not promote him to a Tech III because he continued to associate with SBHA co-worker Kevin Colbert (African American), after Colbert filed an Equal Employment Opportunity Commission ("EEOC") charge of discrimination against the SBHA on August 15, 2006 ("Colbert's initial charge").[5] (Compl. at Exb. D; Pittman Aff. ¶¶ 4-7; Pittman Dep. at 203.) Specifically, Fleckner and Smith threatened Pittman with termination should he continue to associate with Colbert and told Pittman that he "should stop talking with Colbert, that [he] should stop being seen with Colbert, and that [he] should stop agreeing with Colbert during staff meetings." (Pittman Aff. ¶ 5; Pittman Dep. at 142, 164, 166-67, 171, 203-04.) Fleckner and Smith similarly threatened Mike Bovo (Caucasian) with termination should he associate with Colbert. (Compl. at Exb. J; Bovo Aff. ¶¶ 2-5, App. to Plf.'s Opp., DE # 22; Pittman Dep. at 178-80, 234.)

Instead of heeding Fleckner and Smith's warnings to restrict his "work-related interactions with Colbert" (Pittman Aff. ¶ 4; Pittman Dep. at 203-04), Pittman states that

---

[5] Colbert filed additional charges of discrimination against the SBHA on October 30, 2006, December 11, 2006, and August 10, 2007. (Compl. at Exbs. E, F, G.) Colbert's charges resulted in a lawsuit on September 21, 2007. *See Colbert v. Hous. Auth. of the City of South Bend, Ind.*, 2009 WL 290483 (N.D. Ind. Feb. 4, 2009) (No. 3:07-CV-446-CAN) (granting summary judgment in favor of the SBHA on Colbert's claims of retaliation and discrimination on the basis of race and age).

he "continued [his] normal course of interactions with Colbert during the Fall of 2006," as it "was necessary for [Pittman] to interact with Colbert. . . concerning [their] SBHA tasks, to agree with him during staff meetings and, generally, to rely upon [their] mutual work-related interactions, all to the ultimate benefit of the SBHA housing residents." (Pittman Aff. ¶¶ 3, 5.) "As a consequence of those continued interactions with Colbert," Pittman asserts that Fleckner and Smith became critical of his work performance, and Leonard-Dent denied his application to become a Tech III. (Compl. at Exb. H; Pittman Aff. ¶¶ 5-7; Pittman Dep. at 219, Exb. 16.) However, Boone was never forewarned to avoid interaction with Colbert, and according to Pittman, that is the reason Boone received the Tech III promotion. (Pittman Aff. ¶ 15.)

Pittman's claims rest on his supervisors' attempt to forbid his interactions with Colbert at work "all in the same time frame of the first few months after Colbert initiated his charges with the South Bend Human Rights Commission." (Pittman Aff. ¶ 16.) But before the October 26 promotional decision, there is no evidence to suggest that any SBHA employee discouraged Pittman from assisting Colbert with respect to legal claims against the SBHA. Before being turned down for the Tech III position, Pittman was not identified as a witness, nor interviewed in relation to Colbert's initial charge, he never spoke with Leonard-Dent, McDonald, Fleckner, or Smith about Colbert's claims or indicated he wanted to assist Colbert with making claims against the SBHA, and he never properly reported that either he or Colbert were being discriminated or retaliated against.[6] (Compl. at Exb. D; Leonard-Dent Aff. ¶¶ 12, 14, 15;

---

[6] The SBHA has a Personnel Policy Handbook which is provided to all SBHA employees, including Pittman, and contains the SBHA's anti-harassment policies and procedures. (Leonard-Dent Aff. ¶ 6; McDonald Aff. ¶¶ 9, 10; Fleckner Aff. ¶ 6) (referring to Exb. B of App. to Br. in Supp. of Def.'s Mot. for Summ. J., DE # 18-2.) The policy requires SBHA employees to report claims of discrimination to their supervisor, the human resources manager, or the executive director, and prohibits any retaliation for reporting concerns or for participating in the investigation of a complaint under the policy. *Id.*

6

McDonald Aff. ¶¶ 17, 18; Fleckner Aff. ¶¶ 21, 22; Pittman Dep. at 148, 159-60, 171-72, 216, 220.) Sometime prior to October 26, Pittman admits that he only spoke to SBHA Commissioner Gladys Muhammad about his concerns, and reported to Muhammad that Colbert was "being retaliated and discriminated against" and he "felt it was coming [his] way." (Pittman Dep. at 159-61, 170-72.) But Muhammad was not involved in the Tech III promotional decision, nor did she communicate Pittman's concerns with anyone involved in the decision. (Leonard-Dent Aff. ¶¶ 11, 13-15; McDonald Aff. ¶¶ 17, 18; Fleckner Aff. ¶¶ 21, 22; Pittman Dep. at 170, 213.)

After recommending Boone for the Tech III position, Fleckner heard rumors that Pittman intended to file a charge of discrimination with the EEOC. (Fleckner Aff. ¶¶ 23, 25; Pittman Dep. at 148-50.) On October 27, Fleckner called Pittman into his office with Smith present, in order to discuss Pittman's "contemplating going down to the [South Bend] Human Rights [Commission]." (Fleckner Aff. ¶ 23; Pittman Dep. at 148-50, 166, 171.) Pittman admitted that there were "some issues," but he chose not to speak about the issues because he wanted to "think about" them. (Fleckner Aff. ¶ 23; Pittman Dep. at 148-50.) Fleckner became aggressive and told Pittman that he was not to go down to the South Bend Human Rights Commission before he shared his concerns, or it could affect his career with the SBHA. (Pittman Aff. ¶ 6; Pittman Dep. at 149, 234.) But Pittman still refused to talk because Fleckner would not disclose "who told him that [Pittman] was going down to [the South Bend Human Rights Commission]." (Fleckner Aff. ¶ 23; Pittman Dep. at 150, 171.) Instead of reporting his concerns pursuant to the SBHA policy, Pittman filed a charge of discrimination against the SBHA on November 17, 2006, which resulted in this lawsuit. (Compl. at Exb. B; Pittman Aff. ¶ 8.)

Pittman filed a second charge of discrimination on September 13, 2007, but the allegations contained therein are not at issue in this case. (Compl. at Exb. C; Pittman Aff. ¶ 8; Pittman Dep. at 16-21.) Further, Pittman affirmed that this lawsuit does not concern several additional allegations of adverse employment actions that he initially asserted against the SBHA in his first charge of discrimination and complaint, including

7

the following: (1) hostile work environment and unfair work performance evaluations in 2006, 2007, and 2008; (2) assignment to inferior work vehicles; and (3) misidentification with respect to an alleged theft of a tenant's medicine in April 2008. *Id*. Thus, the court considers the only alleged unlawful adverse action Pittman pursues here—the October 26 denial of the Tech III promotion due to racial discrimination and retaliation. (Compl. at Exbs. B, C; Pittman Dep. at 16-21.)

Having narrowed his claims, Pittman alleges that the SBHA did not promote him because he was a "co-worker of an SBHA employee who had filed a charge of discrimination (namely, Colbert)." (Pittman Aff. ¶¶ 8, 10.) Pittman also insists that the decision to promote Boone was based on "his race," even though both Pittman and Boone are African American. (Pittman Dep. at 178.) Pittman explained that the decision was racially discriminatory because Boone was promoted on account of Boone's work associations with Bovo.[7] (Pittman Dep. at 177-80.) However, Pittman admitted that he also associated with Bovo at work. (Pittman Dep. at 180.) Pittman further acknowledged that no one stated directly that he would not or did not receive the Tech III promotion because of his race or because of his associations. (Pittman Dep. at 233-34.)

## II. STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying" the materials

---

[7] According to Pittman, Fleckner and Bovo were "getting along pretty good" and were "good friends"—so when Bovo gave Boone a reference, Boone received the Tech III position because Boone was "affiliated with somebody that's white; i.e. Mr. Bovo." (Pittman Dep. at 177-80.)

8

listed in Rule 56(c) which "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the nonmovant "may not rely merely on allegations or denials in its own pleading; rather, its response must. . . set out specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e)(2); *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir. 1988). "It is not the duty of the court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which he relies." *Harney v. Speedway SuperAmerica, LLC,* 526 F.3d 1099, 1104 (7th Cir. 2008). Furthermore, when considering a motion for summary judgment, the court views the record and makes all reasonable inferences in the light most favorable to the nonmovant. *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999).

Summary judgment is not a substitute for a trial on the merits or a vehicle for resolving factual disputes. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). But if it is clear that the nonmovant will be unable to establish an essential element of his claim, summary judgment is not only appropriate, but mandated. *Massey v. Johnson,* 457 F.3d 711, 716 (7th Cir. 2006) (citing *Celotex,* 477 U.S. at 322-23).

**III. DISCUSSION**

A. *Racial Discrimination*

Title VII of the Civil Rights Act of 1964 provides that it "shall be an unlawful employment practice for an employer. . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color,. . . or national origin." 42 U.S.C. § 2000e-2(a)(1). Pursuant to Title VII, Pittman claims that the SBHA engaged in racial discrimination by denying him the Tech III promotion on account of his being African American, his associating with a co-worker who filed discrimination charges against the SBHA, and on account of Boone's association with Bovo, a Caucasian. Pittman's claim for failure to promote can be supported in one of two ways:

either by proffering direct or circumstantial evidence that racial discrimination motivated the employment decision (known as the direct method), or by relying on the indirect, burden-shifting method outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Nichols v. S. Ill. Univ.-Edwardsville*, 510 F.3d 772, 783 (7th Cir. 2007) (citing *Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 736-37 (7th Cir. 2006)).

Obviously, under the indirect method Pittman's claim fails because the fourth prong is not satisfied: the promotion went to another African American,[8] Boone, who was also a co-worker of Colbert. *Id*. (under the indirect method, plaintiff bears the initial burden of establishing a *prima facie* case of race discrimination by showing that: (1) he is a member of a protected group; (2) he was qualified for the position sought; (3) he was rejected for the position; and (4) the employee who was promoted was outside of the protected group and was not better qualified than the plaintiff) (citing *Johnson v. Nordstrom, Inc.*, 260 F.3d 727, 732 (7th Cir. 2001)). Because Pittman cannot show that a member of a different race (or unprotected class)[9] received the promotion, he cannot establish the *prima facie* case of race discrimination.

Pittman also cannot establish that he was qualified for the job, *see infra*, but in order to expedite the process, the court gets past the *prima facie* case and examines the pertinent issue of whether there was discrimination in the job action. *Nordstrom, Inc.*, 260 F.3d at 732 (citations omitted); *see McGowan v. Deere & Co.*, 581 F.3d 575, 579 (7th

---

[8] In a typical case of racial discrimination, a person of one race loses out in a competition with someone of another race, as when an African American is fired and replaced by a Caucasian (or vice versa). *Williams v. Wendler,* 530 F.3d 584, 587 (7th Cir. 2008). It remains true that there can be racial discrimination within the same race and that Title VII forbids discrimination on the basis of color as well as on the basis of race. *Id*. (relying on *Abdullahi v. Prada USA Corp.,* 520 F.3d 710, 711-13 (7th Cir. 2008)). But there is no suggestion of "color discrimination" in this case. *See id*. (citations omitted).

[9] Pittman apparently believes that he was in a protected class on account of his being "a co-worker of Colbert, who had filed an EEOC charge of discrimination." (Plf.'s Opp., DE # 19 at 13.) But this argument, assuming it is a legally recognizable one, fails because Boone was also a co-worker of Colbert.

10

Cir. 2009) ("When an employee claims that he is qualified and that the employer is lying about the reasons for an adverse employment action, the second prong and the pretext question merge."). In so doing, the court finds that the summary judgment ruling would still stand: the SBHA has set forth a legitimate, nondiscriminatory reason for promoting Boone and not Pittman, and Pittman has offered insufficient evidence of pretext. *See Gates v. Caterpillar, Inc.*, 513 F.3d 680, 690 (7th Cir. 2008) ("If [plaintiff] could establish such a *prima facie* showing, [the employer] would then have to articulate a legitimate, nondiscriminatory explanation for the employment action which [the plaintiff], finally, would have the opportunity to prove to be pretextual."). The SBHA's reason for promoting Boone was that he had more experience and was more qualified than the other applicants, and Pittman was not qualified to be a Tech III. Pittman can demonstrate that the SBHA's explanation is pretextual directly by showing that "a discriminatory reason more likely motivated" the SBHA's employment action, or indirectly by showing that the SBHA's explanations are "unworthy of credence." *Senske v. Sybase, Inc.*, 588 F.3d 501, 507 (7th Cir. 2009) (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)). But Pittman is unable to do so either directly or indirectly.

The undisputed facts reveal that less than one month before the SBHA announced the Tech III vacancy, Fleckner told Pittman that he was not qualified to be a Tech III and Pittman agreed. Fleckner created a plan to assist Pittman with gaining the experience he needed to become a qualified Tech III. In the month following his performance review, Pittman did none of the things that he and Fleckner identified as requirements for his advancement. If Pittman was not qualified to be a Tech III in September, and he did nothing to make himself become qualified before applying, then he was not qualified for the job in October. Although Pittman thought his RV certification made him more qualified than Boone, Pittman later admitted that his RV certification had nothing to do with housing repair and that Boone had relevant work experience that Pittman did not. At any rate, Pittman's subjective self-serving

11

appraisals are simply not enough to create a genuine issue of fact. *Hall v. Forest River, Inc.*, 536 F.3d 615, 620 (7th Cir. 2008) (citations omitted). Pittman also suggests that his not getting an interview before being denied the promotion is evidence of pretext; however, whether or not the SBHA was unwise only to interview Boone for the promotion is not for the court to decide. *See Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 696 (7th Cir. 2006) (the pretext inquiry must focus on whether the employer's stated reason is honest, not well-reasoned, wise or accurate) (citation omitted). The facts show that Leonard-Dent declined to interview all of the remaining applicants, both African American and Caucasian.

As such, no evidence, including Pittman's work associations with Colbert or the alleged friendship Boone had with Bovo, contradicts the SBHA's honest belief that Pittman was not qualified to be a Tech III and that Boone was more qualified than Pittman for the job. *See Hobbs v. City of Chicago*, 573 F.3d 454, 462 (7th Cir. 2009) (evidence of the plaintiff's qualifications would only serve as evidence of pretext if there can be no dispute among reasonable persons of impartial judgment that the plaintiff was clearly better qualified for the position at issue) (citation omitted). Because Pittman is unable to establish that the SBHA's proffered reason for promoting Boone and not Pittman was not the real reason, has no grounding in fact, or is insufficient to warrant the promotional decision, *Senske*, 588 F.3d at 507, summary judgment is appropriate.

A slightly more difficult question is whether Pittman's claim survives summary judgment under the direct method by demonstrating "triable issues as to whether discrimination motivated the adverse employment action." *Darchak v. City of Chicago Bd. of Educ.*, 580 F.3d 622, 631 (7th Cir. 2009) (citing *Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1114 (7th Cir. 2009)). Direct evidence would be an admission by the decision-maker that the adverse employment action was motivated by discriminatory animus. *Id*. Pittman admitted that such admissions are lacking here. Therefore, the court considers any circumstantial evidence of discrimination, which typically includes: (1) suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed

at other employees in the protected group; (2) evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment; and (3) evidence that the employee was qualified for the job in question but was passed over in favor of a person outside the protected class and the employer's reason is a pretext for discrimination. *Darchak*, 580 F.3d at 631 (citing *Sun v. Bd. of Trustees of Univ. of Ill.*, 473 F.3d 799, 812 (7th Cir. 2007); *Troupe v. May Dep't Stores, Inc.*, 20 F.3d 734, 736 (7th Cir. 1994)).

Pittman produces evidence that just prior to the promotional decision and just after Colbert filed an EEOC charge against the SBHA, Fleckner and Smith threatened Pittman with termination should he continue to associate with Colbert at work. Notably, the same threats were made to Bovo, who is Caucasian. But none of the threatening remarks made to Pittman related to the promotion, referred to race, warned against complaining of unlawful conduct, warned against assisting Colbert with his EEOC charge, or suggested any discriminatory animus. In fact, Pittman made clear that the warnings concerned his "work-related interactions" with Colbert as to their "SBHA tasks" completed for the "benefit of the SBHA housing residents." Therefore, the threatening remarks which constitute the main thrust supporting Pittman's claims do not suggest that discrimination motivated the promotional decision.

Further establishing the lack of discriminatory intent is the SBHA's systematic treatment of African Americans. Pittman was denied the promotion at a time when approximately seventy percent of the SBHA's staff was African American, and an even higher percentage of African American employees constituted the maintenance department. In fact, an African American received the promotion at issue here.

In addition, Fleckner set into place a plan to help Pittman get the experience he needed to advance to the Tech III position within the next couple of years. Pittman has not shown that he did anything to become a qualified Tech III during the month following his performance review, nor has he established that the SBHA's explanation for promoting Boone was a ruse.

Moreover, because Leonard-Dent was the one who actually hired Pittman part-time and promoted him to a full-time Tech II, along with McDonald and Fleckner's recommendation,[10] the court employs the "same-actor inference" of nondiscrimination appropriate in Title VII cases when the same individuals both hire/promote and refuse to promote the plaintiff. *Martino v. MCI Commc'ns Servs., Inc.*, 574 F.3d 447, 454-55 (7th Cir. 2009). This inference, even if limited, is based on the common-sense notion that someone who disliked or intended to discriminate against a person would probably not initially hire and later promote that person. *Id.*; *Steinhauer v. DeGolier*, 359 F.3d 481, 488 (7th Cir. 2004) (finding that "it is unreasonable to infer that [plaintiff's supervisors] decided to terminate [plaintiff] based on his sex since they had just decided to hire him notwithstanding his sex"); *E.E.O.C. v. Our Lady of the Resurrection Med. Ctr.*, 77 F.3d 145, 152 (7th Cir. 1996) (approving the district court's use of the same-actor inference, along with other factors, to find non-discrimination based on race).

In all, Pittman's evidence is insufficient for a jury to reasonably conclude that an impermissible factor such as his race or certain associations motivated the SBHA's decision not to promote him. *See Moranski v. Gen. Motors Corp.*, 433 F.3d 537, 540 (7th Cir. 2005) ("It is well-established that '[t]he central question in any employment-discrimination case is whether the employer would have taken the same action had the employee been of a different race (age, sex, religion, national origin, etc.) and everything else had remained the same.'") (quoting *Carson v. Bethlehem Steel Corp.*, 82 F.3d 157, 158 (7th Cir. 1996)). Because Pittman has not met his burden in showing that a genuine issue exists for trial, the court grants summary judgment in favor of the SBHA on Pittman's Title VII discrimination claim.

---

[10] Liability can be based on the bias of employees who have the duty to recommend other employees for promotion, where the decision-maker received the necessary information for decisions from those recommending employees. *David v. Caterpillar, Inc.*, 324 F.3d 851, 861 (7th Cir. 2003).

B. *Retaliation*

Pittman next argues that he was denied a promotion to the Tech III position because the SBHA retaliated against him for associating with Colbert after he filed a charge of discrimination against the SBHA and for reporting that he and Colbert were being treated in a discriminatory/retaliatory manner by the SBHA. While Title VII generally prohibits an employer from retaliating against an employee for conduct that is protected under the Act, 42 U.S.C. § 2000e-3(a), Pittman cannot sustain his retaliation claim under either the direct or indirect methods of proof. *See Metzger v. Ill. State Police*, 519 F.3d 677, 681 (7th Cir. 2008).

Under the direct method of proof, Pittman must present evidence of (1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two. *Turner v. The Saloon, Ltd.*, – F.3d. –, 2010 WL 424580, *7 (7th Cir. Feb. 8, 2010) (citing *Amrhein v. Health Care Serv. Corp.*, 546 F.3d 854, 858 (7th Cir. 2008)); *O'Neal v. City of Chicago,* 588 F.3d 406, 409 (7th Cir. 2009); *Stephens v. Erickson*, 569 F.3d 779, 786-87 (7th Cir. 2009). Pittman's claim fails on each element of the direct method.

First, Pittman did not engage in protected activity. In order to have a complaint with an employer qualify as statutorily protected activity under Title VII, the complaint must indicate that the discrimination occurred because of sex, race, national origin, or some other protected class. *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663-64 (7th Cir. 2006). Pittman did not complain about Fleckner and Smith's limiting his work-related interactions with Colbert, and even if he had, mere work-related interactions are not protected, and the SBHA's limiting those interactions do not constitute a practice made illegal by Title VII. 42 U.S.C. § 2000e-3; *Thompson v. N. Am. Stainless, LP*, 567 F3d 804, 811 (6th Cir. 2009) ("no circuit court of appeals has held that Title VII creates a claim for third-party retaliation in circumstances where the plaintiff has not engaged personally in any protected activity") (distinguishing *Crawford v. Metro. Gov't of Nashville and Davidson County, Tenn.*, 129 S.Ct. 846 (2009)). Pittman further conceded

15

that prior to the promotional decision he never opposed unlawful conduct by reporting it to his supervisors, the human resources manager, or the executive director and never indicated to them that he wanted to assist Colbert with his claims against the SBHA. While Pittman may have honestly believed that he was the object of discrimination prior to his promotion, if he "never mentions it, a claim of retaliation is not implicated, for an employer cannot retaliate when it is unaware of any complaints." *Sitar v. Ind. Dept. of Transp.*, 344 F.3d 720, 727 (7th Cir. 2003) (citations omitted); *see Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 302 (7th Cir. 2004) ("It is axiomatic that a plaintiff engage in statutorily protected activity before an employer can retaliate against [him] for engaging in statutorily protected activity.") (quoting *Durkin v. City of Chicago,* 341 F.3d 606, 614-15 (7th Cir. 2003)).

Even assuming that Pittman's report of discrimination/retaliation to Commissioner Muhammad constitutes protected activity, Pittman's retaliation claim still fails because has not established a causal connection between reporting the unlawful conduct and his not receiving the promotion. In order to do so, Pittman must show that his protected conduct was a substantial or motivating factor in the SBHA's decision. *Culver v. Gorman & Co.*, 416 F.3d 540, 545 (7th Cir. 2005) (citation omitted). Yet, Muhammad was not involved in the Tech III promotional decision, nor does the record support an inference that she ever communicated Pittman's concerns to anyone involved in the promotional process. Instead, the evidence establishes that Fleckner recommended Boone for the promotion and Leonard-Dent offered Boone the job before ever finding out that Pittman might complain of unlawful conduct and before Pittman actually filed his first EEOC charge. As such, Pittman fails to establish a causal connection because the decision-maker who denied Pittman the promotion (and those that recommended the denial) did not know that Pittman felt he was being singled out in any discriminatory way, or was contemplating assisting Colbert with his claims or filing his own EEOC charge. *See Long v. Teachers' Ret. Sys. of the State of Ill.*, 585 F.3d 344, 351 (7th Cir. 2009) (a plaintiff must provide direct or circumstantial evidence that the

decision-maker, one responsible for the contested decision, has acted for a prohibited reason); *Tomanovich*, 457 F.3d at 668 (to establish retaliation the employer must have actual knowledge of the discrimination complaint).

Ultimately, Pittman has also failed to show that any adverse action was taken against him. Pittman's retaliation claim is premised on his belief that he was illegitimately denied promotion opportunities. However, as previously discussed, Pittman has not proven that he was qualified for the promotion; therefore, his promotion denial does not constitute an adverse employment action. *Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 275 (7th Cir. 2004) (citing *Patt v. Family Health Sys., Inc.*, 280 F.3d 749, 754-55 (7th Cir. 2002)).

Under the indirect method, a *prima facie* case of retaliation is established by showing that the plaintiff (1) engaged in statutorily protected activity; (2) suffered a materially adverse action; (3) met his employer's legitimate expectations; and (4) was treated less favorably than a similarly situated employee who did not engage in statutorily protected activity. *Nichols*, 510 F.3d at 785. After plaintiff succeeds in establishing a *prima facie* case, the burden shifts to the employer to produce a non-discriminatory reason for its employment action. *Id*. If the employer meets its burden of production, the burden of proof then remains with the plaintiff to show that the employer's proffered reason is pretextual. *Id*.

Pittman cannot establish a *prima facie* case of retaliation under the indirect method for the same reasons discussed as to the first and second elements of the direct method. *See Stephens*, 569 F.3d at 786. And his "failure to satisfy any one element of the *prima facie* case is fatal to his retaliation claim." *Hudson v. Chicago Transit Auth.*, 375 F.3d 552, 560 (7th Cir. 2004). However, even assuming Pittman could succeed at producing a *prima facie* case (i.e., that after reporting unlawful conduct he was not promoted even though his September 2006 evaluation revealed that he was meeting the SBHA's

expectations for a Tech II and that Boone was similarly situated[11] but did not engage in protected activity), Pittman's retaliation claim could not survive the summary judgment stage because he cannot show that the SBHA's proffered reasons for the promotion were pretextual. *See Scruggs v. Garst Seed Co.*, 587 F.3d 832, 838 (7th Cir. 2008) (an employee's failure to cast doubt on an employer's nonretaliatory explanation means that a claim fails under either the direct or indirect method).

As already detailed, the individuals involved in the Tech III promotional decision believed that Pittman was not qualified to be a Tech III and that Boone was more qualified than the other applicants for the position. Pittman identified things he needed to accomplish in order to become a qualified Tech III, but he did not accomplish those things before applying for the promotion. After asking whether the SBHA's explanation is "honestly believed," the court finds that a reasonable fact finder could not find that the evidence, taken in the light most favorable to Pittman, creates a triable issue of pretext.

Because there is insufficient evidence of retaliation under the direct or indirect methods of proof, summary judgment is wholly appropriate on Pittman's retaliation claim. In the end, the fundamental flaw in Pittman's case is that no matter how strongly he personally believes that he should have received a promotion, he has not produced enough evidence to support an inference that the SBHA acted in retaliation for protected activity.

---

[11] Both Pittman and Boone were African American Tech II's at the SBHA, reported to the same manager, assistant manager, and executive director, and were presumably evaluated under the same standards, but their qualifications and experience varied. *See Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000) (a similarly situated employee must be "directly comparable in all material respects," such as, whether the employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them).

## IV. CONCLUSION

For the foregoing reasons, the court **DENIES** defendant's motion to strike and **GRANTS** defendant's motion for summary judgment on all of plaintiff's claims.

The court directs the clerk to **ENTER THIS FINAL JUDGMENT**:

> Judgment is entered in favor of defendant and against plaintiff, denying all relief on all of plaintiff's claims.

**SO ORDERED.**

Date: February 17, 2010

s/James T. Moody_____
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT